IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ex rel. LISA MADIGAN, Attorney General of the ) | |
| State of Illinois, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 5-197 |
| ) | |
| PHARMACIA CORPORATION, et al., ) | |
| Defendants. ) | |

### PARTIAL CONSENT DECREE/POLYONE CORPORATION

This action was initiated in the name of the People of the State of Illinois by Lisa Madigan, Attorney General of the State of Illinois, on her own motion, and at the request of the Illinois Environmental Protection Agency ("Illinois EPA"), seeking recovery of costs incurred by the Illinois EPA and the Attorney General prior to June 30, 2002, to address releases and threatened releases of hazardous substances as defined by the Illinois Environmental Protection Act, 415 ILCS 5/1, et seq. (2000), and the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. 9601, et seq. ("CERCLA") at the Sauget Area Sites in St. Clair County, Illinois. The Attorney General, the Illinois EPA, and the Defendant, Polyone Corporation ("Polyone"), have each agreed to the entry of this Partial Consent Decree in order to resolve Plaintiff's claims against Polyone in the best interests of the public.

1

## I. BACKGROUND

1. The Attorney General and the Illinois EPA (collectively the "State"), seek the following relief in the filed Second Amended Complaint: reimbursement of response costs incurred by the State prior to June 30, 2002, for response actions taken regarding the Sauget Area Sites.

2. In accordance with 42 U.S.C. 9622, a notice of the filing of the Complaint was sent to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency.

3. In response to releases and substantial threats of releases at or from the Sauget Area Sites, the State has undertaken response actions at or in connection with the Sauget Area Sites.

4. The State has determined the following:

a) prompt settlement with Polyone is practicable and in the public interest within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. 9622(g)(1);

b) the payment to be made by Polyone under this Consent Decree involves only a minor portion of the response costs incurred by the State prior to June 30, 2002, at the Sauget Area Sites, within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. 9622(g)(1);

c) the amount of hazardous substances contributed to the Sauget Area Sites by Polyone and the toxic or other hazardous effects of the hazardous substances contributed by Polyone are minimal in comparison to other hazardous substances at the Sauget Area Sites within the meaning of Section 122(g)(1) of CERCLA, 42

2

U.S.C. 9622(g)(1), because the amount of hazardous substances contributed to the Sauget Area Sites by Polyone does not exceed 0.5 % of the hazardous substances at the Sauget Area Sites;

d)  The evidence accumulated through the State's investigations, discovery conducted by the United States and other potentially responsible parties in other cost recovery/contribution cases, and provided by Polyone link Polyone to a single site, Site Q, within the Sauget Area Sites through two possible avenues.

    i)  Polyone is a corporate successor to Dennis Chemical, Inc. ("Dennis").

    ii)  Based upon manifests submitted to the Illinois EPA, Dennis sent the following wastes to the Clayton Chemical plant, which is adjacent to Site Q, for use in generating hazardous waste fuel: [Tables D and E from Meyer Report];

    ii)  There were no documented releases at Clayton Chemical of wastes sent by Dennis but inspections conducted by Illinois EPA documented a number of leaks or releases from tanks, drums and piping at the Clayton Chemical plant after materials received at the facility had been commingled for storage or processing (many of these incidents were not recorded in the facility operating record) and there were no measures in place to prevent wastes that escaped from entering into the soil and the groundwater (groundwater flows from the Clayton Chemical Plant to Site Q and *vice versa)*;

3

     iii) A single witness testified in a deposition that during the period of 1968-71 he delivered drums collected from Dennis's facility to the Site Q landfill for disposal but could not describe the contents of the drums and testimony of Dennis employees contradicted this testimony;

  e) Dennis participated in settlements with the State of claims regarding response cost recovery claims and cleanups of the Wastex Research Site (Dennis shipped waste solvents to this site) and United Steel Drum site (Dennis shipped drums to this site for reconditioning) and Dennis participated in a third settlement regarding the Great Lakes Container site (Dennis shipped drums to this site for reconditioning) covering time frames contemporaneous with its delivery of wastes to Clayton Chemical

  5. Polyone does not admit any liability to the State arising out of the transactions or occurrences alleged in the Second Amended Complaint.

  6. The Parties recognize and request to the Court to find, in entering this Partial Consent Decree without the admission or adjudication of any issue of fact or law, that this Partial Consent Decree has been negotiated by the Parties in good faith and will avoid prolonged and complicated litigation between the Parties and that this Partial Consent Decree is fair, reasonable, and in the public interest.

  NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## II. JURISDICTION

7.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. "1331 and 1345, and 42 U.S.C. §§9607 and 9613(b). This Court also has pendant jurisdiction over the State's claims under the Illinois Environmental Protection Act. The Court also has personal jurisdiction over Polyone. Polyone shall not challenge the terms of this Partial Consent Decree or this Court's jurisdiction to enter and enforce this Partial Consent Decree.

## III. PARTIES BOUND

8.   This Partial Consent Decree applies to and is binding upon the State and upon Polyone and its heirs, successors and assigns. Any change in ownership or corporate status of Polyone including, but not limited to, any transfer of assets or real or personal property shall in no way alter such Polyone's responsibilities under this Partial Consent Decree.

9.   By entering into this Partial Consent Decree, the mutual objectives of the Parties are:

> a)   to reach a final settlement among the Parties with respect to the response costs incurred by the State prior to June 30, 2002, at the Sauget Area Sites pursuant to Section 122(g)(1) of CERCLA, 42 U.S.C. 9622(g)(1), that allows Polyone to make a cash payment including a premium, to resolve its alleged civil liability under Sections 106 and 107 of CERCLA, 42 U.S.C. 9606 and 9607, and the Illinois Environmental Protection Act, 415 ILCS 5/1, et seq., for the response costs incurred by the State prior to June 30, 2002, at or in connection with the Sauget Area Sites, thereby reducing litigation relating to the Sauget Area Sites;

5

   b) to obtain settlement with Polyone for its fair share of response costs incurred by the State at the Sauget Area Sites prior to June 30, 2002, and to provide for the full and complete contribution protection for Polyone with regard to the response costs incurred by the State prior to June 30, 2002, at the Sauget Area Sites accorded pursuant to Sections 113(f)(2) and 122(g)(5) of CERCLA, 42 U.S.C. 9613(f)(2) and 9622(g)(5).

## IV. DEFINITIONS

10. Unless otherwise expressly provided herein, terms used in this Partial Consent Decree which are defined in CERCLA and/or the Act or in regulations promulgated under CERCLA and/or the Act shall have the meaning assigned to them in CERCLA and/or the Act or in such regulations. Whenever terms listed below are used in this Partial Consent Decree, the following definitions shall apply:

 a. "Act" shall mean the Illinois Environmental Protection Act, 415 ILCS 5/1-58.12.

 b. "Sauget Area Sites" shall mean the site as depicted on the map attached hereto as Appendix A and which is located in the Villages of Sauget and Cahokia, St. Clair County, Illinois.

 c. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§9601 *et seq*.

 d. "Consent Decree" shall mean this Partial Consent Decree.

 e. "Day" shall mean a calendar day unless expressly stated to be a Working day. "Working day" shall mean a day other than a Saturday, Sunday, or State of Illinois holiday. In computing any period of time under this Consent Decree, where the last day would fall on a

6

Saturday, Sunday or State of Illinois holiday, the period shall run until the close of business of the next Working day.

    f. "Illinois EPA" shall mean the Illinois Environmental Protection Agency and any successor departments or agencies thereof.

    g. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

    h. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

    i. "Parties" shall mean the State and Polyone.

    j. "Response Costs" shall mean all costs of "response" as that term is defined by CERCLA and the Act.

    k. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

    l. "Polyone" shall mean Polyone Corporation.

    m. "State" shall mean the State of Illinois acting through the Illinois Attorney General and Illinois EPA.

7

## V. REIMBURSEMENT OF RESPONSE COSTS

11. Within 30 days of entry of this Consent Decree, Polyone shall pay to the State $Three Thousand and Six Hundred Dollars ($3,600.00) in the form of a certified check or corporate check made payable to the Illinois Environmental Protection Agency, for deposit in the Illinois Hazardous Waste Fund. Polyone shall send the certified check(s) to:

Fiscal Services
Illinois Environmental Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

12. Polyone's payment includes an amount for a) past response costs incurred by the State prior to June 30, 2002, at or in connection with the Sauget Area Sites; and b) a premium to cover the risks and uncertainties associated with the information relied upon to circumscribe Polyone's potential liability.

## VI. FAILURE TO MAKE PAYMENT

13. In the event that Polyone fails to make the full payment required by paragraph 11 within 30 days of the effective date of this Consent Decree, that Polyone shall pay interest on the unpaid balance. Payments of interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the State by virtue of Polyone's failure to make timely payments under this Section.

## VII. CERTIFICATION OF POLYONE

14. By signing this Consent Decree, Polyone certifies, individually, that, to the best of its knowledge and belief, it:

8

a) has conducted a thorough, comprehensive, good faith search for documents and has fully and accurately disclosed to the State, all information in its possession as of March 17, 2005, or acquired since that date, or in the possession of its officers, directors, employees, agents, or contractors, which relates, in any way, to the ownership, operation, or control of the Sauget Area Sites, or to the ownership, possession, generation, treatment, transportation, storage or disposal of a hazardous substance, pollutant, or contaminant at or in connection with the Sauget Area Sites;

b) has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents, or other information relating to its potential liability regarding the Sauget Area Sites after notification of potential liability; and

c) has and will comply fully with any and all requests by the State for information regarding the Sauget Area Sites.

## VIII.  COVENANT NOT TO SUE BY THE STATE

15. In consideration of the payments that will be made by Polyone under the terms of the Consent Decree and except as specifically provided in Section IX (Reservation of Rights), the State covenants not to sue or to take administrative action against Polyone pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. 9606 and 9607(a), and the Act for response costs incurred by the State prior to June 30, 2002, relating to the Sauget Area Sites. This covenant not to sue shall take effect for Polyone upon receipt by the State of Polyone's payment as required by Section V (Reimbursement of Response Costs). With respect to Polyone this covenant not to sue is conditioned upon the complete and satisfactory performance by Polyone of all obligations under this Consent Decree and the veracity of the information provided the State by Polyone

9

relating to its involvement with the Sauget Area Sites. This covenant not to sue extends only to Polyone and does not extend to any other person.

## IX. RESERVATION OF RIGHTS BY THE STATE

16. The State reserves, and this Consent Decree is without prejudice to, all rights against Polyone with respect to all matters not expressly included within the Covenant Not to Sue by the State. Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, all rights against Polyone with respect to:

(a) Claims based on a failure by Polyone to meet a requirement of this Consent Order;

(b) Liability for response costs incurred by the State after June 30, 2002, with regard to the Sauget Area Sites;

(c) Liability based upon the ownership or operation of the Sauget Area Sites, or upon the transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Sauget Area Sites, after June 30, 2002 by Polyone;

(d) Liability for damages for injury to, destruction of, or loss of natural resources; and

(e) Criminal liability.

17. Notwithstanding any other provision of this Consent Order, the State reserves, and this Consent Order is without prejudice to, the right to institute proceedings against Polyone seeking to compel Polyone (1) to perform further response actions relating to the Sauget Area Sites or (2) to reimburse the State for additional costs of response if, information is discovered

10

which indicates that Polyone contributed hazardous substances to the Sauget Area Sites in such greater amount or of such greater toxic or hazardous effects that Polyone no longer qualifies as a *de minimis* party at the Sauget Area Sites.

## X. COVENANTS BY POLYONE

18. Polyone hereby covenants not to sue and agree not to assert any claims or causes of action against the State with respect to the Sauget Area Sites or this Consent Decree, including, but not limited to, any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. §9507) through Sections 106(b)(2), 111, 112, 113 of CERCLA, 42 U.S.C. 9606(b)(2), 9611, 9612, and 9613 or any other provision of law, any claim against the State, including any department, agency or instrumentality of the State under Sections 107 or 113 of CERCLA, 42 U.S.C. 9607 or 9613, related to the Sauget Area Sites, or any claims arising out of response activities at the Sauget Area Sites.

19. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42, U.S.C. §9611, or 40 C.F.R. §300.700(d).

20. Polyone agrees not to assert any claims or causes of action (including claims for contribution under CERCLA) that it may have relating to response costs incurred by the State prior to June 30, 2002, for the Sauget Area Sites against any Defendant that subsequently settles with the State in this cause. This waiver shall not apply with respect to any defense, claim, or cause of action that Polyone may have against any person if such person asserts or has asserted a claim or cause of action relating to the Sauget Area Sites against such Polyone.

11

## XI. EFFECT OF SETTLEMENT: CONTRIBUTION PROTECTION

21. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 20, each of the Parties expressly reserves any and all rights (including, but not limited to, any rights to contribution), defenses, claims, demands, and causes of action which each party may have with respect to any matter, transaction, or occurrence relating to any way to the Sauget Area Sites against any person or entity not a party hereto.

22. With regard to claims for contribution against Polyone for matters addressed in this Consent Decree, the Parties hereto agree, and by entering this Consent Decree this Court finds, that Polyone may be entitled to such protection from contribution actions or claims as is provided by CERCLA Sections 113(f)(2) and 122(g)(5), 42 U.S.C. 9613(f)(2) and 9622(g)(5), for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response costs incurred at or in connection with the Sauget Area Sites, by the State prior to June 30, 2002.

## XII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

23. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The State reserves the right to withdraw or withhold its consent if the comments received regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.

Polyone consent to the entry of this Consent Decree without further notice. The State reserves the right to oppose an attempt by any person to intervene in this civil action.

24. If for any reasons the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of this agreement may not be used as evidence in any litigation between the Parties.

## XIII. EFFECTIVE DATE

25. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, this Consent Decree shall constitute final judgment on the Plaintiff's claims solely against Polyone and judgment shall be entered accordingly solely as to Polyone there being no just reason for delay so that Polyone may obtain the benefits of early settlement by avoiding further participation in this litigation.

## XIV. SIGNATORIES/SERVICE

26. Each undersigned representative certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

27. Polyone hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the State has notified Polyone in writing that it no longer supports entry of the Consent Decree.

28. Polyone shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that party with respect to all matters arising under or relating to this Consent Decree and any

applicable local rules of this Court, including, but not limited to, service of a summons. Polyone hereby agrees to accept service, including but not limited to service of a summons, in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. The Parties agree that Polyone need not file an answer to the Second Amended Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

SO ORDERED THIS 24th DAY OF May, 2006.

_____
United States District Judge

14

The UNDERSIGNED PARTIES enter into this Partial Consent Decree in the matter of <u>People v. Pharmacia Corporation, et al.</u>, relating to the Sauget Area Sites.

        PEOPLE OF THE STATE OF ILLINOIS, <u>ex</u> <u>rel</u>.
        LISA MADIGAN, Attorney General
        of the State of Illinois,

        MATTHEW J. DUNN, Chief
        Environmental Enforcement/Asbestos
        Litigation Division

By: _____
        THOMAS DAVIS, Chief
        Environmental Bureau
        Assistant Attorney General

        ILLINOIS ENVIRONMENTAL
        PROTECTION AGENCY

By: _____
        Robert A. Messina
        Chief Legal Counsel

15

The UNDERSIGNED PARTY enters into this Partial Consent Decree in the matter of <u>People v. Pharmacia Corporation, et al.</u>, relating to the Sauget Area Sites.

                          PolyOne Corporation

                        By: *[signature]*
                             Richard E. Hahn
                             Assistant Secretary

16

CC 1504602v4